IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02005-NYW

DAVID WARD, and
LISA STUMMEIER, *individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

EXPRESS MESSENGER SYSTEMS, INC. d/b/a ONTRAC, and
J&B TRANSPORTATION, INC.,

Defendants.

## ORDER ON MOTION FOR CONDITIONAL CERTIFICATION
## AS A COLLECTIVE ACTION

Magistrate Judge Nina Y. Wang

This matter comes before the court on Plaintiffs David Ward and Lisa Stummeier's (collectively, "Plaintiffs") Motion for Issuance of Notice Pursuant to 29 U.S.C. § 216(b) ("Motion" or "Motion for Conditional Certification"), filed December 8, 2017. [#37]. Pursuant to the Order of Reference dated September 25, 2017 [#18], this civil action was assigned to the undersigned Magistrate Judge for a decision on the merits. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. The court has carefully reviewed the Motion and associated briefing, the entire case file, and the applicable law, and concludes that oral argument will not materially assist in the resolution of this matter. For the reasons stated herein, the court GRANTS IN PART and DENIES IN PART the Motion.

### BACKGROUND

Plaintiffs initiated this action on behalf of themselves and all other similarly situated persons that are or were drivers for Defendants Express Messenger Systems, Inc. d/b/a OnTrac

("OnTrac") and J&B Transportation, Inc. ("J&B") (collectively, "Defendants") within the last three years and classified as independent contractors. *See generally* [#8]. OnTrac, a Delaware corporation, "provides regional same-day and overnight package delivery services within Arizona, California, Nevada, Oregon, Washington, Utah, Colorado[,] and Idaho." [*Id.* at ¶¶ 15, 19]; *see also* [#40-1 at ¶ 2]. J&B, a Colorado corporation, "provides regional same-day and overnight package delivery services for Ontrac's [sic] customers within Colorado." [#8 at ¶¶ 16, 20]; *see also* [#40-2 at ¶ 2]. J&B owns a warehouse in Colorado Springs, Colorado, which is used to receive and store OnTrac packages before sending those packages out for delivery; J&B has expanded its operations into New Mexico, Wyoming, and Minnesota. *See* [#8 at ¶¶ 2; #37-7 at ¶ 3; #40-2 at ¶ 6]. Defendants allegedly "subcontract with Regional Service Providers (RSPs), which in turn engage drivers to provide delivery services to or on behalf of OnTrac's customers." [#8 at ¶ 22]; *see also* [*id.* at ¶¶ 23–24]. Plaintiffs allege Defendants "operate as joint employers" of those drivers because Defendants exert "near-total control over the manner in which drivers perform package delivery services." [*Id.* at ¶ 24]; *see also* [*id.* at ¶¶ 22–25, 27–32].

Plaintiff David Ward ("Mr. Ward"), a Colorado resident, allegedly performed delivery services for Defendants as an independent contractor from approximately January 2011 to January 2017 in Denver, Colorado. [#8 at ¶ 13; #37 at ¶¶ 2–3]. Plaintiff Lisa Stummeier ("Ms. Stummeier"), also a Colorado resident, allegedly delivered packages for Defendants as an independent contractor through a company called R&O Transportation, Inc. ("R&O") from approximately August 2016 through May 2017 in Colorado Springs, Colorado. *See* [#8 at ¶ 14; #37-7 at ¶¶ 2–3]. Plaintiffs allege they, like all drivers for OnTrac and J&B, were denied overtime compensation for hours worked in excess of forty per week, and that based on their

2

hours worked, the flat fee they received per delivery, plus their out-of-pocket expenses they did not receive the federally and Colorado mandated minimum wage. *See generally* [#8].

Plaintiffs initiated this action on August 21, 2017. *See* [#1]. Pertinent here, Plaintiffs assert that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for not paying Plaintiffs, or any of its drivers, overtime compensation for hours worked in excess of forty ("Claim I") or the federally mandated minimum wage ("Claim II").[1] *See* [#8 at ¶¶ 66–89]. The undersigned held an initial Scheduling Conference with the Parties on November 14, 2017. *See* [#30]. At the Scheduling Conference, the Parties agreed that discovery was not needed prior to a determination regarding conditional certification of a collective action and, thus, the court set a deadline by which Plaintiffs were to file their Motion for Conditional Certification and set a supplemental Scheduling Conference for March 13, 2018 [#30], later reset for April 19, 2017 [#46].

Plaintiffs filed the instant Motion for Conditional Certification on December 8, 2018. *See* [#37]. Defendants have since filed their Response, and Plaintiffs their Reply. *See* [#40; #43]. The Motion for Conditional Certification is now ripe for determination.

**LEGAL STANDARD**

The FLSA governs the payment of minimum wages and overtime compensation between an employer and its employees. *See* 29 U.S.C. §§ 206–207. Under the statute a covered employer must pay its employees for the time that it employs them; and the FLSA generally requires covered employers to compensate employees for work in excess of forty hours in a work week. *See* 29 U.S.C. §§ 206(a), 207(a). The required overtime compensation is one and one-

---

[1] Plaintiffs also assert similar overtime and minimum wage claims against Defendants under Colorado's Minimum Wage Act, § 8-4-101 *et seq.*, and Mr. Ward asserts an individual claim under the FLSA for retaliation. *See* [#8 at ¶¶ 90–106]. These claims are not at issue for purposes of the instant Motion.

half times an employee's "regular rate" of pay. 29 U.S.C. § 207(e). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'" *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)).

Section 216(b) of the FLSA authorizes private individuals to recover damages for violations of minimum wage and overtime provisions. It provides in relevant part that "[a]n action to recover the liability [for unpaid overtime compensation, retaliation, and liquidated damages] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The FLSA thus provides plaintiffs the opportunity to proceed collectively, which allows "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (interpreting the ADEA, which explicitly incorporates the collective action provisions of the FLSA). Plaintiffs who wish to participate in an FLSA collective action must opt in to the action. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). *See also In re American Family Mutual Insurance Co. Overtime Pay Litigation*, 638 F. Supp. 2d 1290, 1298 (D. Colo. 2009).

In *Thiessen v. General Electric Capital Corp.*, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") approved a two-step process, known as an *ad hoc* approach, for determining whether putative collective members are similarly situated to the named plaintiff.

267 F.3d 1095, 1105 (10th Cir. 2001). Pursuant to this approach, the trial court determines at the initial "notice stage" whether the plaintiff has asserted "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102. During the second stage in the *ad hoc* approach, after discovery has concluded and often prompted by a motion to decertify, the court applies a stricter standard to determine whether the action should continue as a collective action. In particular, the court must evaluate the "disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made [any required filings] before instituting suit." *Thiessen*, 267 F.3d at 1103 (citing *Vaszlavik v. Storage Tech. Corp.,* 175 F.R.D. 672, 678 (D. Colo. 1997)). Numerous courts in this District have followed this *ad hoc* approach in determining whether plaintiffs can move forward collectively under the FLSA. *See, e.g.*, *Baldozier v. American Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005); *but see Turner v. Chipotle Mexican Grill, Inc.,* 123 F. Supp. 3d, 1300, 1309 (D. Colo. 2015) (rejecting the two-step process in favor an approach that allowed "workers bringing the same statutory claim against the same employer to join as a collective, with the understanding that individuals may be challenged and severed from the collective if the basis for their joinder proves erroneous.").[2]

## ANALYSIS

At this juncture, the "notice stage," the court may rely on the allegations of the complaint and any supporting affidavits filed by the plaintiff. *Brown v. Money Tree Mortgage, Inc.*, 222

---

[2] The Tenth Circuit concluded that the "spurious" approach applied in *Turner* was not such a gross abuse of discretion to warrant mandamus relief, but noted that it took no position as to the merits of such approach. *In re Chipotle Grill, Inc.*, No. 17-1028, 2017 WL 4054144, at *3 & n.1 (10th Cir. Mar. 27, 2017). Here, the Parties proposed the use of the two-stage *ad hoc* approach, and that is the approach I will employ.

F.R.D. 676, 680 (D. Kan. 2004). *See also Smith v. Pizza Hut, Inc.*, No. 09-cv-01632-CMA-BNB, 2012 WL 1414325 (D. Colo. Apr. 21, 2012). "[T]he court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1072 (M.D. Tenn. 2015) (citation and internal quotation marks omitted). Thus, the standard for conditional certification is a lenient one, which "typically results in class certification." *Brown*, 222 F.R.D. at 679.

But Plaintiffs must still establish that they are similarly situated. *See Eagle v. Freeport-McMoran, Inc.*, No. 2:15-cv-00577-MV-SMV, 2016 WL 7494278, at *2 (D.N.M. Aug. 3, 2016) ("Conditional certification in the notice stage . . . is by no means automatic."). Though this burden is "modest, it is not non-existent, and it cannot be satisfied simply by unsupported assertions." *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016) (citations and internal quotation marks omitted). The court may deny conditional certification where the complaint is wholly conclusory in nature, the supporting affidavit relies on hearsay from unidentified sources, and the nature of the violation is rendered ambiguous by the particular circumstances of the only named plaintiff. *See Saarela v. Union Colony Protective Servs., Inc.*, No. 13-cv-01637-MSK-MJW, 2014 WL 3408771 (D. Colo. July 14, 2014).

> Plaintiffs seek conditional certification of a collective action consisting of:
>
> All former or current drivers who were classified as independent contractors while performing work for Express Messenger Systems, Inc., d/b/a On[T]rac ("On[T]rac") and/or J&B Transportation, Inc. ("J&B") in the United States from August 16, 2014 to the present [].

[#8 at ¶ 9]; *see also* [#37-1 at 1]. Plaintiffs clarify that the purported collective action encompasses only those drivers in California, Colorado, Idaho, Nevada, Oregon, Utah, and Washington, as there is a collective action already proceeding against OnTrac in Arizona. *See*

[#37 at 4 n.4]. Plaintiffs assert that court authorized notice to the putative collective action is appropriate because they have satisfied the lenient standard applicable at this stage. [#37 at 10]. Namely, Plaintiffs are similarly situated to other drivers who were misclassified as independent contractors, denied overtime compensation for hours worked in excess or forty per week, and denied the federal minimum wage. *See generally* [#8; #37; #37-6; #37-7; #37-8]. Plaintiffs further contend that, despite working for companies that subcontracted for OnTrac and J&B's deliveries, all drivers were actually jointly employed by Defendants. *See* [#37 at 13–15].

Defendants oppose conditional certification for several reasons. First, Plaintiffs lack standing to assert claims under the FLSA. This argument is two-fold: (a) Defendants did not employ either Plaintiff, as each was employed by unaffiliated subcontractors, and (b) Mr. Ward is not an "individual" under the FLSA, as his company DW's Services, Inc. ("DWS") contracted with J&B, not Mr. Ward individually. *See* [#40 at 15–19]. Second, Plaintiffs fail to provide substantial allegations that they are similarly situated to all drivers, because there is no evidence that Defendants subjected all drivers to a uniform policy of misclassifying them as independent contractors. *See* [*id.* at 20–22]. Third, there are no substantial allegations that Defendants were joint employers. *See* [*id.* at 22–27]. Fourth, Plaintiffs' theory of joint employment necessarily limits the size and scope of the putative collective action to only those drivers who worked for OnTrac through J&B in Colorado. [*Id.* at 27]. And, finally, related actions concerning OnTrac cut against conditional certification in this matter. [*Id.* at 27–30]. The court first considers Defendants' standing arguments and then addresses their arguments challenging Plaintiffs' assertions that they are similarly situated to all drivers.

**I.     Standing**

Under Article III of the United States Constitution federal courts have jurisdiction to hear only certain "cases" and "controversies." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). Courts have an independent obligation to satisfy themselves that subject matter jurisdiction exists, even in the absence of a challenge by either party. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006). Indeed, standing cannot be assumed "in order to proceed to the merits of the underlying claim, regardless of the claim's significance." *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016).

Defendants suggest that conditional certification is inappropriate because Plaintiffs cannot demonstrate that each "was an individual who was suffered or permitted to work" by OnTrac or J&B. *See* [#40 at 16]. In other words, neither Plaintiff contracted with Defendants and was thus not employed by Defendants; additionally, Mr. Ward is not an "individual" as defined by the FLSA because only DWS contracted with J&B. [*Id.* at 17–18].

Plaintiffs respond, and this court agrees, that Defendants' standing arguments are misplaced. *See* [#43 at 2–6]. To start, many of the cases Defendants cite in support of their standing arguments concerned challenges under Rule 12(b)(1) or (b)(6) of the Federal Rules of Civil Procedure—procedural mechanisms separate and distinct from a motion for conditional certification. And while the court in no way assumes Plaintiffs have standing, it is not entirely convinced that Defendants' standing arguments truly implicate federal subject matter jurisdiction. *See Hamer v. City of Trinidad*, No. 16-cv-02545-NYW, 2017 WL 5969815, at *6 (D. Colo. Dec. 1, 2017) (discussing the difference between standing and a plaintiff's entitlement to relief, and noting that an interest can support standing even if not protected by federal law).

Defendants' standing arguments focus on whether Plaintiffs were actually employed by Defendants, including whether Mr. Ward constitutes an individual under the FLSA, such that any alleged injury is not fairly traceable to Defendants. *See* [#40 at 16]. In *Fuentes v. Compadres, Incorporated*, though not couched in terms of standing, a court in this District recently addressed whether such an argument implicated federal subject matter jurisdiction. No. 17-cv-01180-CMA-MEH, 2018 WL 1444209, at *2–3 (D. Colo. Mar. 28, 2018). The *Fuentes* court acknowledged that, while one court in this District had agreed that the existence of an employment relationship for purposes of § 216 of the FLSA was a jurisdictional requirement, *see Murphy v. Allstaff Med.Res., Inc.*, No. 16-cv-2370-WJM-MEH, 2017 WL 2224530, at *3 (D. Colo. May 22, 2017), it respectfully disagreed, because Congress had not clearly stated that the employee-employer relationship was jurisdictional and because the Tenth Circuit had traditionally treated employee/employer coverage under the FLSA as non-jurisdictional. *Fuentes*, 2018 WL 1444209, at *3–4. The court finds the reasoning in *Fuentes* more persuasive.

Although Defendants frame the issue as one of standing, their arguments really attack Plaintiffs' entitlement to relief, and invite the court to conduct a merit-type analysis on the issue of whether Defendants were, in fact, Plaintiffs' employers. *Cf. Bryant v. Act Fast Delivery of Colo., Inc.*, No. 14-cv-00870-MSK-NYW, 2015 WL 3929663, at *3 (D. Colo. June 25, 2015) ("Nor does the Court apply the economic realities test to the individual circumstances of the Plaintiffs or potential opt-in plaintiffs. Instead, it simply considers whether sufficient allegations have been made, supported by affidavits or declarations, to show that there are individuals 'similarly situated' to the named plaintiffs."). This is also true of whether Mr. Ward qualifies as an individual, which requires the court to examine the plain language of the FLSA, *see Phillips v. Carpet Direct Corp.*, No. 116-cv-02438-MEH, 2017 WL 121630, at *4 (D. Colo. Jan. 10,

9

2017) (dismissing FLSA claim under Rule 12(b)(6) because an entity was not an individual), and to make fact-intensive determinations going to the merits of Mr. Ward's claims, *see Perez v. Jani-King of Okla., Inc.*, 2017 WL 3841487, at *5 (W.D. Okla. Mar. 20, 2017) (dismissing FLSA claim under Rule 12(b)(6) for want of "factually-supported allegations" that franchisees were individuals). *See also Arbaugh*, 546 U.S. at 511 (noting, "[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination."). Such inquiries are inappropriate at the notice stage. *See Bustillos v. Bd. of Cnty. Comm'rs of Hidalgo Cnty.*, 310 F.R.D. 631, 663–64 (D.N.M. 2015) ("At the notice stage, the court makes an initial determination whether plaintiffs are 'similarly situated.' This inquiry requires no more than substantial allegations that the proposed class members were together the 'victims of a single decision, policy or plan.'").

Finally, a review of the Amended Complaint satisfies the court, at least initially, that Plaintiffs adequately plead standing. Plaintiffs allege they were employees of Defendants, who then misclassified Plaintiffs as independent contractors and failed to pay them overtime compensation and federally mandated minimum wage in violation of the FLSA, and that a favorable decision on the issue will redress Plaintiffs' injuries. *See New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1214–15 (10th Cir. 2017) (standing requires an injury in fact that is traceable to the defendants' conduct and is redressable by a favorable order of the court). Whether Plaintiffs are entitled to relief under the FLSA does not implicate the court's subject matter jurisdiction, and, to the extent it appears Plaintiffs do not have standing at any point, nothing prohibits Defendants from raising such arguments at a later stage of litigation.

## II. Similarly Situated

As mentioned, Defendants also oppose conditional certification because Plaintiffs fail to provide substantial allegations that they are similarly situated to all drivers. Though many of Defendants' arguments are more appropriately reserved for the decertification phase, the court agrees that Plaintiffs have failed to provide substantial allegations that they are similarly situated to drivers in California, Idaho, Nevada, Oregon, Utah, and Washington.

To start, the Parties' both propose that the court apply several distinct factors to determine whether Defendants were joint-employers of Plaintiffs. *Compare* [#37 at 13–15; #43 at 9–12] *with* [#40 at 23–27]. But such a determination is a fact-intensive and individualized inquiry, and this court agrees with those that find this inquiry better suited for the decertification stage.[3] *See, e.g.*, *Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417, 421–22 (W.D. Okla. 2017) ("The undersigned agrees with those courts that have concluded the economic realities inquiry is appropriate at step two of the *ad hoc* approach, that is in addressing a motion for decertification."); *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 471 (S.D. Tex. 2012) ("The Court believes that the economic factors test is likely not appropriate for determination at the first stage of FLSA class certification."); *Medrano v. Flowers Foods, Inc.*, 2017 WL 3052493, at *3 (D.N.M. July 3, 2017) (finding the defendants' economic realities argument "premature" at the first stage of the conditional certification process); *cf. Fuentes*, 2018 WL 1444209, at *5–6 (applying the economic realities test when addressing a motion to dismiss); *Coldwell v. Ritecorp Envtl. Prop. Sols.*, No. 16-cv-01998-NYW, 2017 WL 1737715, at *5 (D. Colo. May 4, 2017) (applying the economic realities test to determine whether the defendants

---

[3] To that end, it is immaterial at this stage whether California state courts found similar OnTrac drivers to be independent contractors under *California* law. *See* [#40 at 29–30]. Indeed, the question of whether such drivers were independent contractors went to the jury. *See Cristler v. Express Messenger Sys., Inc.*, 171 Cal. App. 4th 72 (Cal. Ct. App. 2009).

11

were joint-employers when addressing a motion for summary judgment). Thus, the court must determine *only* whether Plaintiffs have asserted "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102.

In their Amended Complaint and submitted Declarations Plaintiffs allege to be former employees of Defendants jointly, despite subcontracting with various RSPs and being misclassified as independent contractors. *See* [#8 at ¶¶ 2, 21–25]. Plaintiffs allegedly received a daily delivery manifest that listed all of their deliveries for a given day, subject to added or canceled deliveries as well as pick-ups of customer packages for delivery by Defendants. *See* [#8 at ¶¶ 36, 38–39; #37-6 at ¶¶ 10, 13–14, 19; #37-7 at ¶¶ 9–10, 12, 14]. Plaintiffs continue that Defendants required all drivers to "clear" their delivery routes before the drivers were free to cease working for the day; to "clear" a route Defendants must have determined that all packages were either delivered or deemed undeliverable, if applicable; that undeliverable packages were returned and unloaded by the drivers; and that any packages picked up for shipment by Defendants were delivered and unloaded at Defendants' distribution center or warehouse. *See* [#8 at ¶¶ 30, 42–44; #37-6 at ¶¶ 16, 22; #37-7 at ¶¶ 13, 15].

Plaintiffs maintain that clearing their route often led to them working in excess of eight hours per day six or seven days per week, especially during the holidays, but they never received overtime compensation of 1.5 times their normal rates of pay. *See* [#8 at ¶¶ 30, 45–46, 75; #37-6 at ¶¶ 15–16, 22; #37-7 at ¶¶ 13, 18]. Rather, Plaintiffs allege that they, like all other drivers, were paid a flat rate per address where they delivered one or more packages at a given time, but only "if OnTrac deem[ed] that the delivery ha[d] been completed." *See* [#8 at ¶ 26, 38; #37-6 at ¶ 23; #37-7 at ¶ 16]. OnTrac also allegedly made deductions to drivers' paychecks if packages

were not delivered properly. *See* [#8 at ¶ 44; 37-6 at ¶ 20]. Plaintiffs further aver that all drivers were required to use a special scanner when making deliveries, the cost of which OnTrac deducted from each driver's paycheck, and that those drivers who provided their own vehicles for making deliveries had to "pay for gas, maintenance, and all other expenses necessary to operate the vehicles" without compensation or reimbursement. *See* [#8 at ¶ 32, 34; #37-6 at ¶¶ 10, 17; #37-7 at ¶¶ 6, 14]. According to Plaintiffs, the number of hours worked each week, the absence of overtime compensation, and the various out-of-pocket expenses each driver incurred, resulted "in an hourly rate of pay below the relevant federal and Colorado minimum wages." [#8 at ¶¶ 48–49; #37-6 at ¶¶ 24–25; #37-7 at ¶ 17].

Plaintiffs also submit the Declaration of potential opt-in plaintiff Nita Sheldon. *See* [#37-8]. Ms. Sheldon declares that she, too, worked for OnTrac through J&B in Colorado Springs from approximately June 2016 to February 2017, and was classified as an independent contractor. [*Id.* at ¶¶ 2–3]. She further states that she wore an OnTrac uniform, used her own vehicle for deliveries, which required her to pay for tolls, gas, insurance, and maintenance without reimbursement, that she regularly worked in excess of forty hours per week without overtime compensation, and that she did not receive the federally mandated minimum wage when subtracting her out-of-pocket expenses and paycheck deductions from her flat fee and number of hours worked. *See* [*id.* at ¶¶ 5, 6, 9, 12, 13]. These assertions, in conjunction with Plaintiffs' Amended Complaint and Declarations, constitute substantial allegations that Plaintiffs are similarly situated to Colorado drivers that made deliveries for OnTrac <u>and</u> J&B. The court's use of the conjunctive is intentional. While it may be that OnTrac and J&B are in an exclusive contract in Colorado such that all employees, whether formally employed by OnTrac or J&B are employees of both, that is not clear from the Amended Complaint. [#8]. Put another way, it is

13

not clear whether OnTrac uses warehousing and distribution services in Colorado other than J&B or whether J&B provides warehousing and distribution services to entities other than OnTrac in Colorado. Accordingly, this court finds using the conjunctive more appropriate until the Parties agree, or this court finds, that working for OnTrac <u>or</u> J&B in Colorado necessarily means working for the other.

The court further concludes that Plaintiffs fail to provide substantial allegations that they are similarly situated to drivers in California, Idaho, Nevada, Oregon, Utah, and Washington. Plaintiffs' allegations are limited to their interaction and understanding of Defendants' joint-employer relationship in <u>Colorado</u>, as the Amended Complaint and Declarations shed very little light on drivers outside Colorado. *Compare* [#8; #37-6; #37-8 (focusing on the individual declarant's job experience with Defendants)] *with May v. E & J Well Serv., Inc.*, No. 14-cv-00121-RBJ, 2014 WL 2922655, at *1–2 (D. Colo. June 27, 2014) (finding substantial allegations to conditionally certify a nation-wide collective action where declarations encompassed other workers misclassified as independent contractors and denied overtime compensation). Indeed, it does not appear that J&B conducts operations in any of the additional states where OnTrac's operations extend. *See* [#40-2 at ¶ 6 (declaring that J&B's operations include Colorado, New Mexico, Wyoming, and Minnesota)]. Although Mr. Ward may have sufficient personal knowledge of how J&B conducts operations in New Mexico or how OnTrac conducts operations in Arizona, *see* [#37-6 at ¶¶ 4–5], this does not amount to substantial allegations of how OnTrac and J&B conduct their businesses in California, Idaho, Nevada, Oregon, Utah, and Washington. *Cf. Watson v. Advanced Distribution Servs., LLC*, 298 F.R.D. 558, 563 (M.D. Tenn. 2014) (nothing affidavits and declarations submitted in support of a motion for conditional certification need not be admissible at trial, but must be based on personal knowledge). Rather, Plaintiffs

invite the court to infer that drivers from these additional states worked under similar conditions, based solely on Plaintiffs' experiences in Colorado. This is insufficient. *Cf. Peer v. Grayco Mgmt. LLC*, No. 3:16-cv-01578, 2017 WL 2403269, at *4 (M.D. Tenn. June 2, 2017) (denying conditional certification of a city-wide collective where the plaintiff worked at only one specific location).

Nor is the court convinced that a similar collective action against OnTrac in the District of Arizona is sufficient to conditionally certify a collective action of drivers in California, Idaho, Nevada, Oregon, Utah, and Washington. *See Ziglar v. Express Messenger Sys., Inc.*, No. cv-16-02726-PHX-SRB, 2017 WL 6539020, at *1, *4 (D. Ariz. Aug. 31, 2017). The court in *Ziglar*, when confronted with largely similar facts, granted conditional certification of OnTrac drivers working only in Arizona. *Id.* at *5. While *Ziglar* may be informative of OnTrac's operations in Arizona, Plaintiffs do not seek to include such drivers but, rather, urge the court to conditionally certify a collective action consisting of several other states based on the unsupported notion that, because OnTrac's conduct in Colorado and Arizona is similar, so, too, is its conduct elsewhere. But conditional certification is not automatic, and conclusory assertions based on speculation are insufficient. *See Beall v. SST Energy Corp.*, No. 15-cv-01741-MSK-NYW, 2016 WL 286295, at *1 (D. Colo. Jan. 25, 2016). Without more, Plaintiffs fail to offer substantial allegations that they are similarly situated to drivers in California, Idaho, Nevada, Oregon, Utah, and Washington. *See Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 696 (N.D.N.Y. 2015) (finding allegations that the plaintiff was similarly situated to workers nation-wide, based on the plaintiff's unsupported assertions, insufficient for conditional certification).

### III. Notice

In light of the foregoing, Plaintiffs' Proposed Notice [#37-1] and Consent to Join Form [#37-2] are subject to modification. Defendants levy several challenges to these documents as written, and request an opportunity to meet and confer with Plaintiffs about crafting a joint Notice and Consent to Join Form, approved by the Parties and the court. [#40 at 31–32]. Briefly, the court touches on areas that require amendment, and encourages the Parties to engage in a robust meet and confer to facilitate a joint Notice and Consent to Join Form.

First, Plaintiffs allege that OnTrac and J&B were joint employers in Colorado, and that OnTrac <u>and</u> J&B control and supervise the delivery process. [#8 at ¶ 21]. The defined collective mentions OnTrac and makes no mention of J&B. *See* [#37-1 at 1]. As discussed above, the Notice must be directed at employees who were employed by both OnTrac <u>and</u> J&B, unless the Parties can stipulate that working for one entity in Colorado necessarily means working for the other. The proposed Notice also includes drivers who delivered packages for OnTrac in jurisdictions other than Colorado, which is inappropriate for the reasons reflected herein.

Second, the Proposed Notice includes a 90-day opt-in window. [#37-1 at 1]. Defendants object to this amount of time. Without passing judgment on the length of time before the Parties meet and confer, the court notes that courts in this District favor a 60-day opt-in period. *See, e.g.*, *Bracamontes v. Bimbo Bakeries U.S.A. Inc.*, No. 15-cv-02324-RBJ, 2017 WL 4621276, at *2 (D. Colo. Aug. 3, 2017); *Cooper v. Noble Casing, Inc.*, No. 15-cv-01907-WJM-CBS, 2016 WL 8314686, at *1 (D. Colo. May 2, 2016); *May*, 2014 WL 2922655, at *3. And the Parties shall confer as to whether there is a particular basis for a reminder notice to those individuals who have not responded within the 60-day period. *See May*, 2014 WL 2922655, at *3 (approving a reminder notice, but only to those individuals who had not yet responded).

Third, the Proposed Notice purports to extend to drivers who worked for OnTrac and J&B within the last three years, but does not specify a date from which to calculate that three-year period. The Amended Complaint purports to encompass those drivers working for OnTrac and J&B from August 16, 2014. *See* [#8 at ¶ 9]. But the Complaint was filed on August 21, 2017 [#1], and the Amended Complaint on August 29, 2017 [#8]. Defendants propose that the three-year window should be calculated from the date of mailing the Notice. *See* [#40 at 31]; *but cf. Bracamontes*, 2017 WL 4621276, at *2 (approving notice to be sent to employees who worked for the defendant within three years from the date the plaintiffs moved for conditional certification). The Parties shall meet and confer as to a proper date as to which the three-year window shall be calculated.

As to the method of delivery of the Proposed Notice, the court finds that the use of First Class Mail, email, and text message is excessive. Typically, First Class Mail is sufficient, but the court is cognizant that current mailing addresses may be difficult to obtain and that email addresses may be more efficient in reaching potential opt-in plaintiffs. The Parties shall meet and confer as to any stipulated methods of delivery, and whether a third-party administrator is actually necessary, and how the cost of a third-party administrator would be borne

Finally, the court also finds that Plaintiffs' Proposed Notice and Consent to Join Form insufficiently apprise putative opt-ins of their abilities to retain independent counsel or the requirements and/or demands of participating in this collective action, including, but not limited to, that they may be required to participate in written discovery, appear for deposition, or appear for trial.

Accordingly, the Parties are **ORDERED** to meet and confer no later than **April 10, 2018**, as to amending the Proposed Notice and Consent to Join Form in compliance with the court's

instructions and guidance stated herein. On or before **April 10, 2018**, the Parties shall file a Motion to Approve Notice and Consent to Join Form, and shall submit a mutually acceptable revised Notice and Consent to Join Form for the court's consideration. In the event the Parties cannot arrive at mutually acceptable drafts, they shall submit a single proposed Notice and/or Consent to Join Form, indicating the language of the Notice on which they agree and the language on which they cannot agree, as well as the content they propose, respectively. In addition, by that date, Defendants will advise Plaintiffs and the court of the number of individuals to whom the *Hoffman-La Roche* notice will be sent so that this court can have an adequate basis for determining an appropriate opt-in period. To the extent that there are outstanding issues to be discussed, the Parties should be prepared to address them at the April 19, 2018 Scheduling Conference.

## CONCLUSION

Consistent with the reasons stated herein, **IT IS ORDERED** that:

(1) Plaintiffs' Motion for Conditional Certification [#37] is **GRANTED IN PART and DENIED IN PART**;

(2) On or before **April 10, 2018**, Plaintiffs shall meet and confer with Defendants and file with the court a notice advising of the revised definition of the class to be certified, to the extent Defendants oppose the revised definition, they may argue their position in the notice; and

(3) On or before **April 10, 2018**, following a robust meet and confer, the Parties shall **FILE** a Motion to Approve Notice and Consent to Join Form with a mutually acceptable amended Notice and Consent to Join Form, or a notice of impasse that includes their respective contentions regarding how to further amend the Notice and/or Consent to Join Form.

DATED: April 3, 2018                    BY THE COURT:

                                        _____
                                        Nina Y. Wang
                                        United States Magistrate Judge